Larry SINEGAL, Appellant,

v.

The STATE of Texas, Appellee.

No. 58010.

Court of Criminal Appeals of Texas, Panel No. 2.

June 13, 1979.

Joseph C. Lum, Hawthorn, court appointed, on appeal only, Beaumont, for appellant.

Tom Hanna, Dist. Atty. and John R. DeWitt, Asst. Dist. Atty., Beaumont, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, TOM G. DAVIS and DALLY, JJ.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for attempted capital murder. Punishment was assessed by the jury at ninety-nine years.

Evidence adduced at trial reflects that on January 13, 1977 the appellant and a companion entered Scalco's Produce in Port Arthur and robbed the owner, Stephen Scalco, at gunpoint. During the course of the robbery an employee, Willie Sanders, was shot by appellant.

At the outset appellant contends that the court erred in failing to make specific findings of fact concerning the voluntariness of appellant's confession.

Appellant filed a motion to suppress his confession and the court held a hearing thereon in compliance with *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) and Article 38.22, V.A.C.C.P.

Appellant urges that the court's findings were not specific on contested issues of fact relating to coercive acts of the police which caused appellant to give a confession. Specifically, appellant argues that the following disputed facts were not resolved by the court's findings:

"1. Being struck in the mouth by Dunahoe;

"2. Being struck in the stomach by Dunahoe;

"3. Being stood on by Hughes;

"4. Being threatened with a gun by Hughes;

"5. Being verbally threatened by Dunahoe after Hughes' physical abuse that if he didn't confess then they were going to finish what they started."

The court's findings first recited that appellant was warned of his rights, understood all the warnings, voluntarily waived the same, and freely and voluntarily gave the statement. The court then found that

appellant "was not hit, abused or threatened in any manner prior to giving the statement."

Appellant contends that under our holdings in *Hester v. State,* 535 S.W.2d 354 and *Quinn v. State,* 558 S.W.2d 10, we should abate the appeal and direct the trial court to make "specific findings of fact on the above disputed issues of fact" since appellant challenged the ruling of the court in admitting the confession.

■ On appeal challenges to the trial court's ruling generally should be directed to whether the trial court abused its discretion in one of its findings of fact or to whether the trial court properly applied the law to those facts found by it. This Court is not the proper forum for the initial fact-finding process, but should restrict its review of the facts to any issues raised in challenge to the trial court's findings. The findings should resolve the disputed fact issues upon which the grounds of error are based. *Hester v. State,* supra; *Quinn v. State,* supra.

In *Hester* the trial court's findings were nothing more than conclusory recitations that there was a knowing waiver of rights and that the confession was voluntarily made. In *Hester* it was noted that there were numerous disputed fact issues upon which grounds of error were bottomed. In *Quinn* there were disputed fact issues giving rise to grounds of error concerning (1) the assertion of the right to counsel before the written and oral confessions were given (2) the defendant's assertion of his right to remain silent (3) that defendant was beaten numerous times by various officers (4) the questioning of defendant in the interrogation room (5) that a witness had informed the police of the location of the pistol prior to the oral confession. Only one of the disputed fact issues was resolved by the court's findings.

■ Our holdings in *Hester* and *Quinn* do not, however, require the trial court to make with minute specificity findings on each factual issue relating to physical and mental abuse, coercion, improper or lack of proper warnings or any other factual dispute relevant to whether there was a knowing waiver of rights and the confession was voluntarily made. Appellant claims that his confession was involuntary because of physical acts of abuse and threats. The court found that appellant "was not hit, abused or threatened in any manner prior to giving the statement." We hold that the trial court's findings herein amply resolved the factual issues upon which appellant bases his ground of error relating to the admission of the confession. We reject appellant's request that we abate this appeal and direct the trial court to make further findings.

Appellant contends the court erred in admitting his confession into evidence "because the undisputed testimony shows his confession was involuntary."

Appellant claims that evidence offered by him that Officer Hughes inflicted physical abuse upon him and that Officer Dunahoe threatened to finish what they started is undisputed.

■ Whenever the testimony of the accused is undisputed as to alleged coercive acts, then as a matter of law the confession is inadmissible. *Farr v. State,* Tex.Cr.App., 519 S.W.2d 876; *Sherman v. State,* Tex.Cr. App., 532 S.W.2d 634; *Smith v. State,* Tex. Cr.App., 547 S.W.2d 6.

■ Appellant concedes that Dunahoe expressly testified in response to his questions that he did not hit appellant in the mouth or stomach but urges that there was no evidence to refute his testimony that Hughes stood on him and threatened him with a gun. Further, it is contended that appellant's testimony relative to Dunahoe's threat to finish what they had started was not refuted.

Appellant testified that the events in question occurred on the trip from the county jail in Beaumont to the Port Arthur police station. Appellant related that as they arrived in Port Arthur they came to a divided highway and that they proceeded on the road toward Winnie and parked at a place "where there's no houses." After the

car was stopped, appellant stated that Officer Hughes, "had his gun out and said 'You want to do him like he did that man,' so I said, 'Hold on, man, whatever you want to know, I'll tell you.'" Dunahoe "was out of the car on the same side" where these events transpired. Appellant then agreed to make a confession and they got back in the car and continued the trip to the Port Arthur police station.

Appellant testified that when the trip resumed Dunahoe said, "If you don't say . . . tell us what we done when we get there, then we gonna finish what we started when we get there."

Hughes did not testify. Dunahoe related that they took appellant "directly from the County Jail [Beaumont] to the Port Arthur Police Department" and they "didn't stop anyplace." They departed about "six fifteen" and arrived about "twenty to seven." Hughes drove the vehicle and Dunahoe sat in the back seat with appellant. There were no stops except at traffic lights and they did not "stop anywhere to converse" with appellant. Under cross-examination Dunahoe stated that he did not make any promise that "it would go easy on him" if appellant made a statement. In response to a question about what means he used to encourage appellant to make a statement Dunahoe stated that the only thing was telling appellant that "his accomplice had told us that he was the man that had shot him and had been involved in the robbery." Dunahoe read appellant his rights after the trip to Port Arthur began and appellant orally admitted the crime during the trip. Upon arrival in Port Arthur Judge John Knowles warned appellant of his rights and a written confession was taken following such warning.

The instant case is unlike *Farr v. State,* supra, and *Sherman v. State,* supra, where the acts of coercion were uncontradicted. Appellant's testimony places the coercive acts of Hughes at a place where a detour and stop were taken on the trip from the Beaumont jail to the police station in Port Arthur. It is undisputed that there were two officers in the vehicle, Hughes the driver and Dunahoe who sat in the back seat with appellant. Appellant related that the car was stopped, Hughes got out of the car, put his feet on him and pointed his gun toward him and threatened him. Dunahoe's testimony that their trip was uninterrupted except for stops at traffic lights refutes this testimony. Obviously, Hughes would had to have stopped the vehicle to get out of the car and stand on appellant. Dunahoe's testimony that the only means used to encourage a confession was his statement to appellant that the accomplice had told them that appellant had taken part in the crime tends to refute the claim that the evidence of threats is undisputed. In addition the threats allegedly took place during and immediately following a stop which Dunahoe denied. While Hughes did not testify, it is undisputed that Dunahoe was with appellant during the entire trip which lasted only about twenty-five minutes. We hold that appellant's allegations of coercion were rebutted by the testimony of Dunahoe and find that the court's findings regarding the admissibility of the confession are supported by the evidence.

The judgment is affirmed.